GRAND RAPIDS MOTOR COACH COMPANY *v.*
PUBLIC SERVICE COMMISSION.

1. EQUITY—MOTION TO DISMISS—ALLEGATIONS ACCEPTED AS TRUE.
Allegations in bill of complaint are accepted as true on motion
to dismiss without answer being filed.

2. AUTOMOBILES—MOTOR CARRIERS—MUNICIPAL CORPORATIONS—PUB-
LIC SERVICE COMMISSION.
Insofar as the operations of motor coaches are within the city
granting exclusive franchise for such purpose, they are ex-
cluded from the regulatory authority of the public service
commission under the motor carrier act (Act No. 254, art.

REFERENCES FOR POINTS IN HEADNOTES

[1] 41 Am. Jur., Pleading, § 332.
[2] 37 Am. Jur., Motor Transportation, § 31.
[2] Jurisdiction of public service commission over carrier transport-
ing by motor trucks or busses.    51 A.L.R. 820; 103 A.L.R. 286;
109 A.L.R. 577.
[2] Validity and applicability of statutes relating to use of
highway by private motor carriers and contract motor carriers
for hire.    175 A.L.R. 1345.
[3] 50 Am. Jur., Statutes, § 225.
[4] 20 Am. Jur., Evidence, § 211.
[5, 6] 14 Am. Jur., Courts, §§ 202, 203.
[6] 43 Am. Jur., Public Utilities and Services, § 229.
[7] 50 Am. Jur., Statutes, § 431.
[10] 50 Am. Jur., Statutes, § 431.
[11] 50 Am. Jur., Statutes, §§ 219, 228.
[12] 50 Am. Jur., Statutes, § 223.
[13] 50 Am. Jur., Statutes, § 377.
[14] 50 Am. Jur., Statutes, § 303.
[15] 50 Am. Jur., Statutes, §§ 368, 370, 377.
[16] 50 Am. Jur., Statutes, §§ 223, 224, 431.
[17] 37 Am. Jur., Motor Transportation, § 17.
[17] Validity and applicability of statutes relating to use of
highway by private motor carriers and contract motor car-
riers for hire.    109 A.L.R. 550; 175 A.L.R. 1333.
[21] 37 Am. Jur., Motor Transportation, § 31.
[21] Exemption of vehicles used in or adjacent to municipality from
regulations of private motor carriers and contract motor carriers
for hire.    109 A.L.R. 550, 577.
[23] 14 Am. Jur., Costs, § 91.

5, § 2, Pub. Acts 1933, as amended by Act No. 41, Pub. Acts 1943).

3. STATUTES—CONSTRUCTION OF AMBIGUOUS SECTION.

Where the language of a section of a statute is obviously ambiguous, it is necessary to determine the intent of the legislature in enacting the section.

4. AUTOMOBILES—MOTOR CARRIERS—EXEMPTIONS—POSSIBILITY OF ENCROACHMENT BY MUNICIPAL BUS LINES.

A motor carrier of passengers for hire under the motor carrier act is charged with knowledge of what exemptions from that act are provided therein and of the possibility of an encroachment on its business by a city bus line extending its service not over 2 miles beyond the city limits (Act No. 254, art. 5, § 2, Pub. Acts 1933, as amended by Act No. 41, Pub. Acts 1943).

5. STATUTES—SUPREME COURT.

The Supreme Court does not pass on the wisdom of legislation.

6. PUBLIC SERVICE COMMISSIONS—FINDINGS—MOTOR CARRIERS—SUPREME COURT.

The Supreme Court does not pass on the wisdom of the findings of the public service commission under the motor carrier act, if they follow the law (Act No. 254, Pub. Acts 1933, as amended).

7. STATUTES—CONSTRUCTION OF EXEMPTIONS.

In construing a statute, it is a general rule that exemptions are carefully scrutinized and not extended beyond their plain meaning.

8. AUTOMOBILES—CONSTRUCTION OF EXEMPTION—MOTOR CARRIERS—MUNICIPAL CORPORATIONS.

Under motor carrier act providing that "act shall not apply to * * * motor carriers of passengers whose local operations may extend a distance of not to exceed 2 miles beyond the boundary of such city or villages in which such local operations are wholly carried on" the clause "in which such local operations are wholly carried on" is an adjective clause modifying the words "such city or villages" which immediately precede and does not limit the exemption because used in such adjective clause and not in the main clause defining the extent of the exemption (Act No. 254, art. 5, § 2, Pub. Acts 1933, as amended by Act No. 41, Pub. Acts 1943).

9. SAME—PURPOSE OF EXEMPTION IN MOTOR CARRIER ACT—MUNICI-
PAL BUS SERVICE IN SURROUNDING AREAS.

In exempting local city-controlled motor carriers of pas-
sengers from the motor carrier act it was the purpose of
the act to permit them to extend service to surrounding
areas as they are built up and require such service as an
integral part of the metropolitan area (Act No. 254, art.
5, § 2, Pub. Acts 1933, as amended by Act No. 41, Pub. Acts
1943).

10. STATUTES—CONSTRUCTION—AMBIGUITY—EXEMPTION.

In construing an ambiguous provision of an act the purpose
of the act will not be defeated by a forced and technical
interpretation of an exemption contained therein.

11. CONSTITUTIONAL LAW—CONSTRUCTION OF STATUTE.

Although the Supreme Court may not usurp the law-making
function of the legislature, the proper construction of a
statute is a judicial function.

12. STATUTES—CONSTRUCTION OF STATUTE—INTENT.

In construing a statute, a court is required to discover the
legislative intent.

13. SAME—CONSTRUCTION OF STATUTE—DOUBTFUL MEANING.

Where the language of an act is of doubtful meaning, a rea-
sonable construction must be given, looking to the purpose
to be subserved thereby, taking into consideration the oc-
casion and necessity for the statute.

14. SAME—CONSTRUCTION OF STATUTE—PURPOSE—STRICT LETTER.

In construing a statute, its purpose should be effected, if
possible, and prevail over its strict letter.

15. SAME—CONSTRUCTION OF STATUTE—INJUSTICE—ABSURDITY.

Injustice in the application of a statute should be prevented
and absurd consequences avoided when construing it.

16. SAME—CONSTRUCTION OF STATUTE—GENERAL INTENT—EXEMP-
TIONS.

In construing a statute the general intent of the act as a
whole must be considered and especially the intent of a section
listing exemptions from the application of the act.

17. AUTOMOBILES—CONSTRUCTION OF MOTOR CARRIER ACT—GENERAL
PURPOSE—EXEMPTIONS.

The motor carrier act as a whole was designed to control the
use of the highways and to guarantee to the public as a

whole, adequate facilities for travel and at the same time
to insure to them adequate service by public carriers of
passengers by requiring all carriers using the public high-
ways to submit to regulations of a State administrative
agency except as specifically exempted (Act No. 254, Pub.
Acts 1933, as amended).

18. SAME—MOTOR CARRIERS OF PASSENGERS—REGULATION—MUNICI-
PAL CORPORATIONS—PUBLIC SERVICE COMMISSIONS.

Under the motor carrier act, a single carrier may be engaged
in both regulated and unregulated operations at the same
time, since if it operates a motor coach service entirely
within any city, such service would not be subject to reg-
ulation by the public service commission (Act No. 254, art.
5, § 2, Pub. Acts 1933, as amended by Act No. 41, Pub.
Acts 1943).

19. SAME—MOTOR CARRIER ACT—CONSTRUCTION OF EXEMPTION AS
TO LOCAL OPERATION IN AND NEAR CITIES.

Section of motor carrier act exempting from its application
vehicles used entirely within any city or village and "motor
carriers of passengers, whose local operations may extend
a distance not to exceed 2 miles beyond the boundary of
such city or villages, in which such local operations are
wholly carried on, provided such extension shall not be to
or into another city or village" is construed as using vehicle
and motor carrier operations of the vehicle interchangeably
so as to enlarge the exempt operations of a carrier to cover
use of exempt vehicles in areas surrounding a city or vil-
lage as an integral part of the service rendered within the
local operation rather than setting up a separate class of
carriers, notwithstanding such use does not accord with the
definition of motor carrier contained elsewhere in the act
(Act No. 254, art. 1, § 1, Pub. Acts 1933, as amended by
Act No. 264, Pub. Acts 1945; art. 5, § 2, as amended by
Act No. 41, Pub. Acts 1943).

20. SAME—MOTOR CARRIERS OF PASSENGERS—EXEMPTIONS.

Since the operation of a motor carrier for passengers can
be carried on only through its vehicles, a statutory exemp-
tion of the vehicles from certain regulation exempts the
operation of the carrier (Act No. 254, art. 5, § 2, Pub. Acts
1933, as amended by Act No. 41, Pub. Acts 1943).

21. SAME—MOTOR CARRIER ACT—CONSTRUCTION OF EXEMPTION—
LOCAL OPERATION IN AND NEAR CITIES.

Extension of exemption from the motor carrier act of vehicles

used in carrying passengers within a city or village to permit them to serve an area within 2 miles of the limits thereof, except ·in other cities and villages is because of public need of co-ordinated service arising from the general economic and ·functional scheme of the city or village (Act No. 254, art. 5, § 2, Pub. Acts 1933, as amended by Act No. 41, Pub. Acts 1943).

22. SAME—MOTOR CARRIERS—REGULATION—EXEMPTIONS—INTERFERENCE WITH OTHER CARRIERS.

Under the motor carrier act, the fact that a city-controlled motor coach operator has operations to or into other cities or villages certificated by the public service commission would not affect its right to conduct exempted operations extending into township area within 2 miles of the city controlling its operations, notwithstanding it interfered with service rendered by another certificated carrier between such city and another city (Act No. 254, art. 5, § 2, Pub. Acts 1933, as amended by Act No. 41, Pub. Acts 1943).

23. COSTS—PUBLIC QUESTION—CONSTRUCTION OF AMBIGUOUS SECTION OF MOTOR CARRIER ACT.

No costs are allowed on appeal in suit to construe an ambiguous section of the motor carrier act, a public question being involved (Act No. 254, art. 5, § 2, Pub. Acts 1933, as amended by Act No. 41, Pub. Acts 1943).

BOYLES, NORTH, and DETHMERS, JJ., dissenting.

Appeal from Ingham; Salmon (Marvin J.), J. Submitted October 6, 1948. (Docket No. 34, Calendar No. 44,182.) Decided February 28, 1949.

Bill by Grand Rapids Motor Coach Company against Michigan Public Service Commission to vacate a cease and desist order. City of Grand Rapids intervened as a party plaintiff. Grandville-Wyoming Transit Company intervened as a party defendant. Bill dismissed on motion. Plaintiff and intervening plaintiff appeal. Reversed and remanded.

*Uhl, Bryant, Slawson & Wheeler (Warner, Norcross & Judd, of counsel), for plaintiff.*

*John M. Dunham,* City Attorney, and *Evered C. Dudley,* Deputy City Attorney, for intervening plaintiff.

*Eugene F. Black,* Attorney General, *Edmund E. Shepherd,* Solicitor General, and *Archie C. Fraser,* Assistant Attorney General, for defendant.

*Robert S. Tubbs,* for intervening defendant.

*Amici curiae:*
*J. T. Hammond,* for Greyhound Corporation, Central Greyhound Lines, Inc., and Great Lakes Greyhound Lines, Inc.

*H. J. Waples* and *Arthur P. Boynton* (*Clark, Klein, Brucker & Waples,* of counsel), for Michigan Mover's and Warehousemen's Association.

BUTZEL, J. Act No. 254 of the Public Acts of 1933, as amended from time to time* (Comp. Laws Supp. 1940, 1945, § 11352–1 *et seq.,* Stat. Ann. 1947 Cum. Supp. § 22.531 *et seq.*), known as "the motor carrier act," was enacted to promote safety upon and to conserve the use of the public highways in this State, and to provide for the supervision, regulation and control of the use of such highways by all vehicles operated by motor carriers of passengers and property for hire upon and over such highways. Such motor carriers, except those exempted by the act, are placed under the supervision, regulation and control of the Michigan public service commission, one of the defendants herein. Under the act the commission is authorized and charged with the duty to supervise and regulate the transportation of persons or property by motor vehicles for hire upon and

---

* 3 Comp. Laws 1948, § 475.1 *et seq.*—REPORTER.

over the public highways of this State in all matters, whether specifically mentioned in the act or not, and not expressly excepted by the act. Motor carriers, not so excepted, are forbidden to operate their vehicles until they comply with the provisions of the act, which also expressly provides that such motor carriers must first obtain certificates of public convenience and necessity from the commission. The commission is vested with very broad powers and authority of supervision and regulation of such motor carriers as well as all matters affecting the relations between such motor carriers. Their business is declared by the act to be vested with a public interest. We limit our discussion to common motor carriers of passengers for hire, as that was the only question litigated in the trial court.

Plaintiff, Grand Rapids Motor Coach Company, a Michigan corporation, operating in the city of Grand Rapids, Kent county, Michigan, filed a bill of complaint seeking an injunction against the enforcement of a cease and desist order entered by the defendant commission. As the decree appealed from in this case was one of dismissal of plaintiffs' bill of complaint on a motion and without an answer being filed, we accept the allegations in such bill of complaint as true for the purpose of the present discussion.

Plaintiff has an exclusive franchise to operate motor coaches in the city of Grand Rapids under a franchise ordinance, duly approved by the electors on September 12, 1922. Its operations in the city of Grand Rapids are expressly excluded from the regulatory authority of the defendant by the motor carrier act. Plaintiff also holds certificates of public convenience and necessity, issued by defendant and its predecessor, authorizing extensions of its service to the city of East Grand Rapids and to the village of Comstock Park, both in Kent county. Plaintiff

alleges that it has served these two areas upwards of 50 years.

Plaintiff further shows that in 1946, in response to demands by employers and employees in the Diesel Equipment Division of the General Motors Corporation and the Reynolds Metals Company, both with plants located outside the corporate limits of the city of Grand Rapids and located in Wyoming township, Kent county, within 2 miles of such corporate limits, it extended its service so as to transport these employees to and from work. Many of these employees live within the corporate limits of Grand Rapids. Plaintiff also was forced to extend one of its other lines two-tenths of a mile beyond the corporate limits into the same township for purely "turn-around" purposes. None of these Wyoming township extensions go into any other city or village. They were made with the approval of the city of Grand Rapids in accordance with plaintiff's franchise and no application was made by plaintiff to the defendant commission for a certificate of public convenience and necessity in relation to any operations into Wyoming township.

Grandville-Wyoming Transit Company, a Michigan corporation, intervening defendant, holds a certificate of public convenience and necessity from the defendant commission, which it claims is exclusive and permits it to operate as a common motor carrier of passengers for hire from the city of Grand Rapids to the city of Grandville, Michigan, in and through the township of Wyoming, over routes specified in the certificate. On or about December 5, 1946, it filed a complaint with the defendant commission alleging that plaintiff's operations into the township of Wyoming, as hereinbefore set out, were beyond the scope of and contrary to the authority previously given by the defendant commission to plaintiff to extend its lines to East Grand Rapids and Comstock Park, and

were in violation of the exclusive permit intervening defendant alleged it held to operate its lines in said township. It asked the commission to investigate and make appropriate findings and orders.

A hearing was held before defendant commission at which plaintiff, Grand Rapids Motor Coach Company, and intervening defendant presented their respective claims. Plaintiff claimed, and the intervening defendant denied, that these operations in Wyoming township were exempt under the section of the act providing for exemption of motor carriers of passengers whose local operations may extend a distance of not more than 2 miles beyond the boundary of such city or village in which such local operations are wholly carried on, and that, therefore, plaintiff was not required to have such operations authorized by the defendant commission. This raised the question as to the construction of the exemption in article 5, § 2, of the motor carrier act, hereafter quoted, and on April 2, 1947, after a conference between the parties, the defendant commission agreed to withhold entering a formal cease and desist order to enable the parties in the interim to present clarifying legislation to the State legislature then in session. Although several bills were presented, none was passed by the legislature, for reasons not disclosed by the record. It is suggested that possibly the legislature deemed the language of the act sufficiently clear. On July 8, 1948, the defendant commission entered a formal cease and desist order whereupon plaintiff filed the bill of complaint to restrain the enforcement of such order. The city of Grand Rapids was permitted to intervene as a party plaintiff in the proceedings. The trial court entered an order dismissing the bill of complaint, and plaintiff appeals.

Article 5, § 2, of Act No. 254, *supra,* as amended by Act No. 41, Pub. Acts 1943* (Comp. Laws Supp. 1945, § 11352–37, Stat. Ann. 1947 Cum. Supp. § 22.567), excludes from the operation of the statute and the mandatory regulation, supervision and control by the commission certain vehicles used by motor carriers and others. The exemption, involved in the present litigation and which this Court is asked to construe, is found in part (a), and reads as follows:

"This act shall not apply to:
"(a) Vehicles operated entirely within any city or village of this State, nor to motor carriers of passengers whose local operations may extend a distance of not to exceed two miles beyond the boundary of such city or villages in which such local operations are wholly carried on, provided such extension shall not be to or into another city or village."

This language is obviously ambiguous as evidenced by the various constructions claimed by the parties to this act and the briefs of the *amici curiae* filed in this Court. Our attention has not been called to any case where this language has been construed and therefore it is necessary to determine the intent of the legislature in enacting this section.

Plaintiff in the briefs and oral argument calls our attention to the hardship, expense, possible loss of time through delay and the general inconvenience to large numbers of employees living in Grand Rapids and working in these plants located outside of Grand Rapids but within what might be termed a metropolitan area and within two miles of the city limits, if after reaching the city limits in plaintiff's coaches they must alight and take another coach line to their places of employment. A somewhat similar hardship also might be encountered by them on their re-

---

* See 3 Comp. Laws 1948, § 479.2.—REPORTER.

turn home. On the other hand, among the many contentions of the intervening defendant, it is claimed that if after working up a business in a sparsely populated district, followed by a growth in its population, a large portion of the most profitable business may be usurped by another company, not only operating in a city, but also to another city and village under certificates from the defendant commission or its predecessor, it will result in a hardship and injustice to intervening defendant although it was first to install motor coach service under a certificate from defendant commission. Of course, the intervening defendant is charged with knowledge of what exemptions are provided by law, and of the possibility of an encroachment on its business by a city bus line extending its service not over two miles beyond the city limits. Had plaintiff not obtained certificates from defendant commission for other operations, the query arises whether the intervening defendant would raise any objections whatsoever if plaintiff remained within the two-mile limit. We, however, do not pass on the wisdom of legislation or of the findings of the Michigan public service commission if they follow the law. In coming to our conclusion we have not overlooked the general rule that exemptions in a statute are carefully scrutinized and not extended beyond their plain meaning. We do not overlook the claim that although the motor carrier act has heretofore been repeatedly amended, the legislature did not see fit to amend article 5, § 2, subsection (a), *supra,* the language remaining the same. Our attention, however, is not called to any previous case in which we were asked to construe the wording of this exemption now before us.

The defendant in its briefs and argument relies strongly on the use of the word "wholly" in the exemption hereinbefore quoted. It claims that as the plaintiff was engaged in certificated operations to

the city of East Grand Rapids and to the village of Comstock Park, its local operations are not *wholly* carried on in the city of Grand Rapids and, therefore, it does not qualify under the exemption. This emphasis of the word "wholly" is not correct in view of the other language of the exemption. Applying the basic rules of grammatical construction to the language used in the statute it is apparent that the clause "in which such local operations are wholly carried on" is an adjective clause modifying the words, "such city or villages" which immediately precede it. It does not limit the exemption because it is used in such adjective clause and not in the main clause which defines the extent of the exemption.

It seems clear that the intent of the legislature in providing for the exemption involved here was to permit a local city-controlled motor carrier of passengers to extend its services to surrounding areas as they are built up and require service as an integral part of the metropolitan area and before they are incorporated into the city itself. To defeat such intention by a forced and technical interpretation of the language of the statute would be against the policy expressed by this Court in numerous decisions. This is especially true in this case where the language of the statute is not clear but is ambiguous. It therefore becomes the duty of the court to construe the language used by the legislature so as to effectuate the evident purpose of the legislation. This rule was recently stated in *Webster* v. *Rotary Electric Steel Company,* 321 Mich. 526, 531, where it was said:

"Although we may not usurp the law-making function of the legislature, the proper construction of a statute is a judicial function, *Albert* v. *Gibson,* 141 Mich. 698, and we are required to discover the legislative intent, *People* v. *Marxhausen,* 204 Mich. 559

(3 A. L. R. 1505); *Miles, ex rel. Kamferbeek,* v. *Fortney,* 223 Mich. 552; *Gwitt* v. *Foss,* 230 Mich. 8; and *People* v. *Gould,* 237 Mich. 156.

"Where, however, the language is of doubtful meaning, a reasonable construction must be given, looking to the purpose subserved thereby. *Attorney General* v. *Bank of Michigan,* Harr. Ch. (Mich.) 315; *Bennett* v. *Michigan Pulpwood Co.,* 181 Mich. 33. Its occasion and necessity are matters of judicial concern, *Sibley* v. *Smith,* 2 Mich. 487, and *Bennett* v. *Michigan Pulpwood Co., supra,* and its purpose should be effected if possible, *People* v. *Stickle,* 156 Mich. 557. Its spirit and purpose should prevail over its strict letter, *Stambaugh Township* v. *Iron County Treasurer,* 153 Mich. 104. Injustice in its application should be prevented, *Attorney General, ex rel. Common Council of the City of Detroit,* v. *Marx,* 203 Mich. 331, and absurd consequences avoided, *Attorney General* v. *Railway,* 210 Mich. 227."

Having this evident intent of the legislature in mind and the above rules of construction before us, we must now look at the language of this statute and determine what it means. To do this we must consider, also, the general intent of the statute as a whole and especially the intent of the section in which this exemption is included. The statute as a whole is designed to control the use of the highways and also to guarantee to the public, as a whole, adequate facilities for travel and at the same time to insure to them adequate service by public carriers of passengers. To this end it requires all carriers using the public highways to submit to regulations of a State administrative agency except as specifically exempted by the act. These exemptions are set out in article 5, § 2, of the act, *supra* (Comp. Laws Supp. 1940, § 11352–37, Stat. Ann. 1947, Cum. Supp. § 22.567), and start by stating, "This act shall not apply to;" then sets out 7 exemptions in subparagraphs (a) to (g). Each one of the subparagraphs

begins with the word "vehicles" and so indicates the primary purpose of this section of the act is to exempt from the act certain vehicles used by carriers or others whose operation of such vehicles would otherwise be regulated under the general terms of the act. Thus it is clear from a reading of all these exemptions and especially that in subparagraph (a), which is involved in this case and before us for construction, that the act contemplates that some operations of a carrier will not be regulated even though the carrier itself is so regulated as to certain of its operations. Thus a carrier of passengers which operates between 2 or more cities must obtain a certificate from the commission and submit to regulation by that body, but if it should at the same time also operate a motor coach service entirely within any city under a franchise from that city, such operations would be exempt from regulations by the commission under the first clause of section 2 (a), which exempts from the operation of the statute vehicles used wholly within any city or village. Therefore, a single carrier would be engaged in both regulated and unregulated operations at the same time under the provisions of this statute. For that reason the argument advanced on behalf of intervening defendant that a carrier cannot be both a regulated and nonregulated carrier is untenable for under the unquestioned and clear provisions of this statute it is permitted and contemplated.

The next question is, what does the added clauses of section 2 (a), *supra,* mean, and particularly when applied to the facts of this case? After the act exempts vehicles used entirely within any city or village the statute then provides, "nor to motor carriers of passengers, whose local operations may extend a distance not to exceed 2 miles beyond the boundary of such city or villages, in which such lo-

cal operations are wholly carried on, provided such extension shall not be to or into another city or village." The difficulty here arises from the use of the term "motor carriers" instead of operations or vehicles. But in view of the rest of the section, it seems the evident intent of the legislature was to use vehicle and motor carrier operations of the vehicle interchangeably. Any other meaning would give the statute an absurd construction and defeat the intent of the legislature. This is not of itself a separate exemption of a motor carrier but rather an addition to the exemption of vehicles operated by a motor carrier as it was added to the section exempting such vehicles from the act. Though the term "motor carrier" is defined in the statute;* such definition does not apply to the term as used in this section. Here, it must be held to be synonymous with the word vehicle. From a reading of the entire section in which these clauses appear, it is obvious that the intent was not to set up a special type of exempt carrier, but to extend the exemption of vehicles used by the carrier, which may or may not be regulated as to other operations. The reason the term "motor cariers of passengers" was used was to differentiate this type of vehicle from that used to carry property, for a different permissible extension was set up in the section as to vehicles used to carry property. This can also be seen by the use of the language "whose local operations" in this clause. Nowhere else in the statute does it refer to or define the term local operations, and so the most reasonable meaning that can be given to this term as used here is that it refers to operations of vehicles exempted by the first part of the section. In using the word "whose"

---

* See Act No. 254, art. 1, § 1, Pub. Acts 1933, as amended by Act No. 264, Pub. Acts 1945 (3 Comp. Laws 1948, § 475.1 [Comp. Laws Supp. 1945, § 11352–1, Stat. Ann. 1947 Cum. Supp. § 22.531]). —Reporter.

it indicates that the legislature contemplated that there would be other vehicles or operations of a carrier which would not be local and which to that extent would not be exempt.

Thus it must be held that this language instead of setting up a separate class of exempt carriers, was intended merely to enlarge the exemption of vehicles used entirely within any city or village so that they could be used to serve surrounding areas of such city or village, within the limits designated in the statute, without being subject to the control and regulation of the commission. The same is true of the word "wholly" used in the clause which modifies the words city or villages beyond whose boundaries such extensions are permitted. This does not mean that all the operations of a carrier must be carried on within such city or village, but rather that such vehicles used in these permissible extended operations must be used wholly in such local operations, which are operations entirely within any city or village until extended as permitted by this section of the statute.

This is the only reasonable and practicable construction that can be placed on this language without completely disregarding some part of the language used. If it was intended to set up a class of exempted carriers the statute would have defined what carriers were so exempted and nowhere in the language of this section are such carriers defined. The section merely states what extensions of service are permitted without being subjected to regulation. To hold that this sets up a class of exempt carriers without any other language than used here would lead to absurd results or require this Court to legislate by defining for the legislature what carriers were to be exempt when the statute itself does not define any such class of carriers. It would seem that if the legislature intended to set up such a class it would

have done so in a separate section or at least subparagraph. The operation of the plaintiff company, a motor carrier of passengers, can only be carried on through its vehicles. The operation of the vehicles makes it a motor carrier, and to exempt the vehicles is to exempt the operations of the carrier the same as to exempt the operation of the carrier is to exempt its vehicles. While the law is somewhat confused in the use of the words "motor carriers of passengers" and "vehicles" in this section, we find that these terms are used interchangeably. Otherwise the exception in the law becomes meaningless. Had the plaintiff or any other company limited itself to the use of a city's streets, and those within 2 miles beyond the city's boundaries, but not to or into another city or village, no objection, whatsoever, could have been made. The local operations were wholly within the city. It seems absurd to say that because, in addition to such local operations, the company obtained permission from the Michigan public service commission to go into a near-by adjoining city or an almost adjacent village, it lost its rights, given to it by the statute, to go in another direction within a metropolitan area, but not over 2 miles beyond the city limits, as provided by law. Therefore, in view of the claimed ambiguity of the language used, the reasonable and practical construction, to carry out the evident legislative intent, is to hold this is merely an enlarging of the exemption as to vehicles used entirely in any city or village so as to exempt the use of such vehicles in the surrounding areas provided for in the statute as an integral part of the service in such city or village. The reason for allowing such extension is that such areas are so much an integrated part of the metropolitan area that it can best be served by such co-ordinated service, for the interest of those served by such extensions is in the city

or village around which they live.  The need of such service is to and from all points inside the city to the areas immediately surrounding the city.  This is a part of the general economic and functional scheme of the city or village.

Under this construction, the fact that plaintiff has other certificated operations to or into other cities or villages would make no difference as to its right to make the claimed extensions or service involved in this case.

The order of dismissal is set aside and the case remanded to the trial court for further proceedings in accordance with this opinion.  A public question being involved, no costs are allowed.

Sharpe, C. J., and Bushnell, Reid, and Carr, JJ., concurred with Butzel, J.

Dethmers, J. (*dissenting*).  The decree dismissing plaintiff's bill of complaint should be affirmed.

The pertinent facts are fully set forth in Mr. Justice Butzel's opinion.  As therein stated, this case involves the construction of article 5, § 2 (a), of "The motor carrier act," being Act No. 254, Pub. Acts 1933, as amended [*] (Comp. Laws Supp. 1945, § 11352–37, Stat. Ann. 1947 Cum. Supp. § 22.567). Section 2 reads in part as follows:

"Sec. 2. This act shall not apply to:
"(a) Vehicles operated entirely within any city or village of this State; nor to *motor carriers of passengers* whose local operations may extend a distance of not to exceed 2 miles beyond the boundary of such city or villages in which such local operations are wholly carried on, provided such extension shall not be to or into another city or village;
\* \* \*

"(b) Vehicles owned \* \* \*

_____
[*] See 3 Comp. Laws 1948, § 479.2.—Reporter.

"(c) Vehicles owned * * *
"(d) Vehicles used * * *
"(e) Vehicles used * * * or trucks owned * * *
"(f) Vehicles used * * *
"(g) Vehicles used * * *"

When the legislature used the words "motor carriers of passengers" in the above section, may we conclude that it meant to say "vehicles"? In *People v. Lowell*, 250 Mich. 349; *Becker v. Detroit Savings Bank*, 269 Mich. 432; and *Detroit Club v. State of Michigan*, 309 Mich. 721, we quoted with approval from Black on Interpretation of Laws, p. 36, the following:

"Even though the court should be convinced that some other meaning was really intended by the lawmaking power, and even though the literal interpretation should defeat the very purposes of the enactment, still the explicit declaration of the legislature is the law, and the courts must not depart from it."

A glance will disclose that the legislature used the word "vehicles" several times in section 2. Obviously, when it used the words "motor carriers of passengers" in section 2 (a), despite the repeated use of the word "vehicles" in other parts of section 2, the legislature did not mean "vehicles."

When the language of a statute is plain, certain and unambiguous there is no room for judicial construction. *In re Merrill*, 200 Mich. 244; *City of Grand Rapids v. Crocker*, 219 Mich. 178; *City of Detroit v. Township of Redford*, 253 Mich. 453; *Detroit Trust Co. v. Hartwick*, 278 Mich. 139; *People v. Powell*, 280 Mich. 699 (111 A. L. R. 721); *Detroit Edison Co. v. Secretary of State*, 281 Mich. 428; *In re Chamberlain's Estate*, 298 Mich. 278; *In re Gay's Estate*, 310 Mich. 226.

Is the pertinent language of section 2 ambiguous? Let us examine it piecemeal:

(1) *"This act shall not apply to:"* Plainer language could not have been used.

(2) *"(a) Vehicles operated entirely within any city or village of this State;"* This language is plain, but it is not pertinent to this case because there are not here involved "vehicles operated entirely within any city or village."

(3) *"nor to motor carriers of passengers"* This language is equally plain. It does not serve to exempt certain operations or routes but only "motor carriers of passengers." But, which "motor carriers of passengers" are exempt? Those

(4) *"whose local operations may extend a distance of not to exceed 2 miles beyond the boundary of such city or villages in which such local operations are wholly carried on,"* Here, again, the verbiage is plain. This last quoted language does not constitute the grant of an additional exemption, nor even, as suggested, of a right to operate in the 2-mile zone beyond the city limits; on the contrary, it forms a modifying clause, defining and describing the "motor carriers of passengers" which are exempt. The plain language of section 2 (a), up to this point, still does not exempt certain routes or operations, but, rather, certain "motor carriers of passengers." Operations wholly carried on in a single city, which may extend into the 2-mile zone surrounding it, are referred to in the act as "local operations," a term used twice in the last above quotation. Clearly, the legislature used the word "local" here for the purpose of emphasizing that the exemption applies to certain "motor carriers" only. Which? Those whose operations are thus local. It is significant that the legislature used the words *"nor to motor carriers of passengers* whose local operations may extend," et cetera, rather than such words as *"nor to the local operations* of motor carriers of passengers which may extend," et cetera. The language

actually used expresses a clear legislative intent to exempt certain carriers, not certain operations. But, are all "motor carriers of passengers" whose operations are thus local exempt? If the language of section 2 (a) stopped at this point the answer would be yes. However, the next succeeding language is a proviso clause, in the nature of an exception, which provides that this exemption of "motor carriers of passengers whose local operations may extend a distance of not to exceed 2 miles beyond the boundary of such city," et cetera, shall apply only

(5) *"provided such extension shall not be to or into another city or village;"* What is meant by the words "such extension"? They manifestly refer to some antecedent. The preceding language of section 2 (a) contains that antecedent, *viz.;* "operations" which "may extend a distance of not to exceed 2 miles beyond the boundary of such city." It will be noted that the word "operations" is in the plural number, while the word "extension" is in the singular. The conclusion seems inescapable that "such extension" refers to and embraces not merely one of a "carrier's" operations beyond the city limits, but all of them. Each operation outside the city, within the 2-mile zone, is a part of "such extension." When any part of "such extension" is "to or into *another* city" the motor carrier of passengers operating it is of the kind or class which falls within the proviso clause's exception to the exemption and is, accordingly, not exempt.

From the above examination of the pertinent language of section 2 (a) it is clear that that language is plain, certain and unambiguous; that there is, therefore, no room left for its judicial construction and that, in consequence, we may not substitute for the words employed by the legislature a word of our own choosing.

"We cannot assume the legislature made a mistake and used one word when it in fact intended to use another. The language of the statute is plain as it reads and we do not feel authorized to change its meaning by substituting another word for the one the legislature used. Endlich on Interpretation of Statutes, § 4; 23 Am. & Eng. Enc. Law (1st Ed.), p. 299; *Handy* v. *Township of Meridian,* 114 Mich. 454." *People* v. *Crucible Steel Co.,* 150 Mich. 563.

Plaintiff is a motor carrier of passengers operating within the city of Grand Rapids, with an extension of its "local operations" reaching out in several directions from various points on the city's boundaries into the 2-mile zone surrounding that city. One part of "such extension" being "to or into another city," namely, East Grand Rapids, plaintiff falls within the exception to the exemption and is subject to the act and to the regulation of the Michigan public service commission, except as relates to its "vehicles operated entirely within any city or village."

Decree should be affirmed, without costs, a public question being involved.

BOYLES, and NORTH, JJ., concurred with DETHMERS, J.