MILLER v AUTO-OWNERS INSURANCE COMPANY

Docket No. 63808. Argued November 13, 1980 (Calendar No. 2).—
Decided September 1, 1981.

Richard J. Miller brought an action against his no-fault automo-
bile insurer, Auto-Owners Insurance Company, for personal
protection insurance benefits for injuries arising out of the
maintenance of a motor vehicle when his automobile fell on his
chest while he was replacing shock absorbers. The insurer
defended on the ground that the vehicle was "parked" when
the injury occurred, and that the statutory exclusion of parked
vehicles applied. The Ingham Circuit Court, Jack W. Warren,
J., granted partial summary judgment for the plaintiff on the
issue of liability, holding that the injury arose out of the
maintenance of the automobile, and that it was not "parked"
within the meaning of the statutory exclusion. The parties then
stipulated the amount of damages and judgment was entered
for the plaintiff. The Court of Appeals, Maher, P.J., and Kelly
and Walsh, JJ., reversed, holding that the vehicle was
"parked", and remanded for a determination whether the
plaintiff fell within one of the exceptions to the exclusion
(Docket No. 78-3028). The plaintiff appeals.

In a unanimous opinion by Justice Levin, the Supreme Court
*held*:

Miller's injury clearly involved the maintenance of his vehi-
cle as a motor vehicle, and compensation is required by the no-
fault act without regard to whether the vehicle might be
considered "parked" at the time of injury. The policy of the
parked vehicle exclusion does not apply to the injury in this
case.

1. There is an apparent tension between the section of the
no-fault act requiring compensation for injuries incurred in the
maintenance of a vehicle and the section excluding injuries

REFERENCES FOR POINTS IN HEADNOTES

[1] 7 Am Jur 2d (Rev), Automobile Insurance §§ 34, 194, 341.
   Validity and construction of "no-fault" automobile insurance plans.
   42 ALR3d 229.

[2, 3, 5, 6] 7 Am Jur 2d (Rev), Automobile Insurance §§ 137, 194.

[4] 7 Am Jur 2d (Rev), Automobile Insurance §§ 34, 136.

incurred in the maintenance of a parked vehicle with three stated exceptions. Since most, if not all, maintenance is done while the vehicle is parked, and the three exceptions are not related to normal maintenance situations, there appears to be a conflict. This apparent conflict should not be resolved solely by focusing on the term "parked", but through an assessment of the policies appearing from the requirement of coverage and the exception from the required coverage for parked vehicles.

2. The phrase "arising out of the ownership, maintenance or use" of a vehicle appeared in automobile liability insurance policies long before no-fault, and was apparently used in the no-fault act in awareness of its history. The maintenance aspect of the phrase covers the act of repairing the covered automobile. The policy embodied in the requirement of the no-fault act that coverage extend to injury arising out of the maintenance of a motor vehicle as a motor vehicle thus is to provide compensation for injuries, such as those here, incurred in the course of repairing a vehicle.

3. The policy underlying the parking exclusion is not so obvious but is comparably definite. Injuries involving parked vehicles do not normally involve the vehicle as a motor vehicle, but in much the same way as any other stationary object would be involved. The stated exceptions to the exclusion clarify and reinforce this construction because each exception pertains to injuries related to the character of a parked vehicle as a motor vehicle, characteristics which make it unlike other stationary roadside objects that can be involved in vehicle accidents. The underlying policy of the parking exclusion is that, except in three general types of situations, a parked car is not involved in an accident as a motor vehicle, and it is therefore inappropriate to compensate injuries arising from its non-vehicular involvement within a system designed to compensate injuries involving motor vehicles as motor vehicles.

4. The policies underlying the two sections of the no-fault act are thus complementary rather than conflicting. Nothing of the policy behind the parking exclusion, to exclude injuries not resulting from involvement of a motor vehicle as a motor vehicle, conflicts with the policy of compensating injuries incurred in the course of maintaining a motor vehicle. Miller's injury while replacing his shock absorbers clearly involved the maintenance of his vehicle as a motor vehicle, and compensation is thus required by the no-fault act without regard to whether his vehicle might be considered "parked" at the time of injury.

Reversed.

92 Mich App 263 (1979) reversed.

1. INSURANCE — NO-FAULT INSURANCE — AUTOMOBILES — MAINTE-
NANCE — PARKED VEHICLES — STATUTORY CONSTRUCTION.

The apparent tension between the personal protection insurance
section of the no-fault insurance act requiring compensation for
injuries incurred in the maintenance of a vehicle and the
section excluding injuries incurred in the maintenance of a
parked vehicle with three stated exceptions should not ·be
resolved solely by focusing on the term "parked", but through
an assessment of the policies appearing from the requirement
of coverage and the exclusion from the required coverage for
parked vehicles (MCL 500.3105[1], 500.3106; MSA 24.13105[1],
24.13106).

2. INSURANCE — NO-FAULT INSURANCE — AUTOMOBILES — MAINTE-
NANCE — WORDS AND PHRASES.

The phrase in the no-fault insurance act, "arising out of the
ownership, maintenance or use" of a vehicle, appeared in
automobile liability insurance policies long before no-fault, and
was apparently used in the no-fault act in awareness of its
history; the maintenance aspect of the phrase covers the act of
repairing the covered automobile (MCL 500.3105[1], 500.3106;
MSA 24.13105[1], 24.13106).

3. INSURANCE — NO-FAULT INSURANCE — AUTOMOBILES — MAINTE-
NANCE — STATUTES — PUBLIC POLICY.

The policy embodied in the personal protection insurance require-
ment of the no-fault act that coverage extend to injury arising
out of the maintenance of a motor vehicle as a motor vehicle is
to provide compensation for injuries incurred in the course of
repairing a vehicle (MCL 500.3105[1]; MSA 24.13105[1]).

4. INSURANCE — NO-FAULT INSURANCE — AUTOMOBILES — PARKED
VEHICLES — STATUTES — PUBLIC POLICY.

The underlying policy of the exclusion of parked vehicles from
the operation of the no-fault insurance act is that, except in
three general types of situations, a parked car is not involved
in an accident as a motor vehicle but as a stationary object,
and that it is therefore inappropriate to compensate for injuries
arising from its non-vehicular involvement within a system
designed to compensate for injuries involving motor vehicles as
motor vehicles (MCL 500.3106; MSA 24.13106).

5. INSURANCE — NO-FAULT INSURANCE — AUTOMOBILES — MAINTE-
NANCE — PARKED VEHICLES — STATUTES — PUBLIC POLICY.

Nothing of the policy behind the parked-vehicle exclusion of the

no-fault insurance act, to exclude injuries not resulting from involvement of a motor vehicle as a motor vehicle, conflicts with the policy of compensating for injuries incurred in the course of maintaining a motor vehicle under the personal protection insurance provision of the no-fault act (MCL 500.3105[1], 500.3106; MSA 24.13105[1], 24.13106).

6. INSURANCE — NO-FAULT INSURANCE — AUTOMOBILES — MAINTE-
NANCE.

An injury which a plaintiff suffered when his automobile fell on his chest while he was replacing its shock absorbers clearly involved the maintenance of his vehicle as a motor vehicle, and compensation is thus required by the no-fault insurance act without regard to whether his vehicle might be considered "parked" at the time of injury (MCL 500.3105[1], 500.3106; MSA 24.13105[1], 24.13106).

*Sinas, Dramis, Brake, Boughton, McIntyre & Reisig, P.C.* (by *George T. Sinas*), for plaintiff.

*Fraser, Trebilcock, Davis & Foster, P.C.* (by *C. Mark Hoover*), for defendant.

LEVIN, J. Richard J. Miller was severely injured when his automobile fell on his chest while he was attempting to replace a pair of shock absorbers. The repair was being done in the parking lot of Miller's apartment building.

Miller sought personal protection insurance benefits from his no-fault insurance carrier, defendant Auto-Owners Insurance Company, alleging that payment of such benefits is required by the no-fault motor vehicle liability act:

"Under personal protection insurance an insurer is liable to pay benefits for accidental bodily injury arising out of the ownership, operation, *maintenance* or use of a motor vehicle as a motor vehicle, subject to the provisions of this chapter." MCL 500.3105(1); MSA 24.13105(1) (emphasis supplied).

Auto-Owners defended on the grounds that Miller's car was "parked" at the time of his injury, and that the obligation to pay benefits imposed by § 3105(1) was thus qualified by the "parked vehicle" exception found in § 3106 of the no-fault act:

"Accidental bodily injury does not arise out of the ownership, operation, maintenance or use of a *parked* vehicle as a motor vehicle unless any of the following occur:

"(a) The vehicle was parked in such a way as to cause unreasonable risk of the bodily injury which occurred.

"(b) The injury was a direct result of physical contact with equipment permanently mounted on the vehicle, while the equipment was being operated or used or property being lifted onto or lowered from the vehicle in the loading or unloading process.

"(c) The injury was sustained by a person while occupying, entering into or alighting from the vehicle." MCL 500.3106; MSA 24.13106 (emphasis supplied).

The trial court granted Miller's motion for partial summary judgment on the issue of liability, holding that Miller was maintaining the vehicle under § 3105, and that it was not parked within the meaning of § 3106. The parties then stipulated to the amount of damages and a judgment was entered for Miller. The Court of Appeals reversed, holding that the vehicle was parked, and remanded for a determination whether Miller's injury fell within one of the three classes of injury enumerated in clauses (a)-(c) of § 3106 as arising out of the ownership, operation, maintenance or use of a parked vehicle as a motor vehicle. We reverse and remand to the trial court for further proceedings not inconsistent with this opinion.

There is an apparent tension between these two sections of the no-fault act: requiring, on the one hand, compensation for injuries incurred in the

maintenance of a vehicle but not requiring, on the other hand, compensation for injuries incurred in the maintenance of a *parked* vehicle, with three exceptions. Since most, if not all, maintenance is done while the vehicle is parked, and since the three exceptions appear addressed to circumstances unrelated to normal maintenance situations, a conflict appears.

It would perhaps be possible, as argued by Auto-Owners, to distinguish among parked vehicles according to whether they were parked involuntarily, as when a driver pulls onto the shoulder to repair a flat tire, or voluntarily, as in Miller's case. Such a distinction, however, would often be difficult to draw. What of a car which is obviously malfunctioning but which the driver is able to nurse home to his or her garage, where the tools necessary for the repair are available? What of a car which is voluntarily parked in one's driveway but which, after a cold Michigan night, becomes involuntarily parked? Would an injury from a battery explosion while trying to jump-start the car be covered? We do not think that a nebulous distinction between voluntarily and involuntarily parked-for-repair vehicles was intended.

This apparent conflict should not be resolved solely by focusing on the term "parked" but, rather, through an assessment of the respective policies appearing from the requirement of coverage in § 3105(1) and the exclusion from that required coverage for parked vehicles in § 3106 as they bear upon the scope of coverage intended by the Legislature.

The phrase "arising out of the ownership, maintenance or use" of a vehicle has commonly been used in automobile insurance policies, and was apparently used in the no-fault act in awareness of that history.

"Long prior to the no-fault movement the term 'arising out of the ownership, maintenance, or use' of a motor vehicle appeared in automobile liability insurance policies. This term has been adopted as the basic causal relation test in all no-fault auto insurance plans. Like its counterpart in workers' compensation, it has been the subject of dispute, but unlike the workers' compensation situation of commencing with a new test, no-fault automobile insurance will have the benefit of the body of case law construing the term under the liability system." O'Connell & Henderson, Tort Law, No-Fault and Beyond (1975), p 362.

The meaning of the term "maintenance", in addition to appearing from the common sense of the word, has been established in the case law: "The 'maintenance' aspect of the 'ownership, maintenance, use' clause covers the act of repairing the covered automobile." 12 Couch on Insurance (2d ed), § 45:63, p 152. The policy embodied in the requirement of § 3105(1) that coverage extend to "injury arising out of the * * * maintenance * * * of a motor vehicle as a motor vehicle" thus is to provide compensation for injuries, such as Miller's, incurred in the course of repairing a vehicle.

The policy underlying the parking exclusion is not so obvious but, once discerned, is comparably definite. Injuries involving parked vehicles do not normally involve the vehicle *as a motor vehicle.* Injuries involving parked vehicles typically involve the vehicle in much the same way as any other stationary object (such as a tree, sign post or boulder) would be involved. There is nothing about a parked vehicle *as a motor vehicle* that would bear on the accident.[1]

The stated exceptions to the parking exclusion clarify and reinforce this construction of the exclu-

---

[1] Similarly, § 3123 of the act excludes damage to motor vehicles from the statutory obligation to pay benefits for damage to property,

sion. Each exception pertains to injuries related to the character of a parked vehicle as a motor vehicle—characteristics which make it unlike other stationary roadside objects that can be involved in vehicle accidents.

Section 3106(a), which excepts a vehicle parked so as to create an unreasonable risk of injury, concerns the act of parking a car, which can only be done in the course of using the vehicle as a motor vehicle, and recognizes that the act of parking can be done in a fashion which causes an unreasonable risk of injury, as when the vehicle is left in gear or with one end protruding into traffic.

Section 3106(b) recognizes that some parked vehicles may still be operated as motor vehicles, creating a risk of injury from such use as a vehicle. Thus a parked delivery truck may cause injury in the course of raising or lowering its lift or the door of a parked car, when opened into traffic, may cause an accident. Accidents of this type involve the vehicle as a motor vehicle.

Section 3106(c) provides an exception for injuries sustained while occupying, entering or alighting from a vehicle, and represents a judgment that the nexus between the activity resulting in injury and the use of the vehicle as a motor vehicle is sufficiently close to justify including the cost of coverage in the no-fault system of compensating motor vehicle accidents.

Each of the exceptions to the parking exclusion thus describes an instance where, although the vehicle is parked, its involvement in an accident is nonetheless directly related to its character as a

unless the motor vehicle is parked in a manner so as not to cause an unreasonable risk of the damage that occurs. MCL 500.3123(1)(a); MSA 24.13123(1)(a). A properly parked motor vehicle is thus treated under the act as non-vehicular property for purposes of the payment of property protection insurance benefits.

motor vehicle. The underlying policy of the parking exclusion is that, except in three general types of situations, a parked car is not involved in an accident *as a motor vehicle.* It is therefore inappropriate to compensate injuries arising from its non-vehicular involvement in an accident within a system designed to compensate injuries involving motor vehicles as motor vehicles.

The policies underlying § 3105(1) and § 3106 thus are complementary rather than conflicting. Nothing of the policy behind the parking exclusion —to exclude injuries not resulting from the involvement of a vehicle as a motor vehicle—conflicts with the policy of compensating injuries incurred in the course of maintaining (repairing) a motor vehicle. The terms of the parking exclusion should be construed to effectuate the policy they embody and to avoid conflict with another provision whose effect was intended to be complementary.

Miller's injury while replacing his shock absorbers clearly involved the maintenance of his vehicle as a motor vehicle. Compensation is thus required by the no-fault act without regard to whether his vehicle might be considered "parked" at the time of injury.

The judgment of the Court of Appeals is reversed and the case is remanded to the trial court for further proceedings not inconsistent with this opinion.

COLEMAN, C.J., and KAVANAGH, WILLIAMS, FITZGERALD, RYAN, and BLAIR MOODY, JR., JJ., concurred with LEVIN, J.