WINTER v AUTOMOBILE CLUB OF MICHIGAN

Docket No. 81973. Argued December 7, 1988 (Calendar No. 3). Decided
     September 26, 1989.

Johannes Winter brought an action in the Wayne Circuit Court
     against the Automobile Club of Michigan, his no-fault insurer,
     seeking personal injury protection benefits for an injury to his
     hand which occurred when a slab of sidewalk raised by a tow
     truck he had borrowed to repair the sidewalk in front of his
     home slipped off a hook and fell. The court, James E. Mies, J.,
     relying on *Johnston v Hartford Ins Co*, 131 Mich App 349
     (1984), granted summary disposition for the defendant, holding
     that when the accident occurred the tow truck was not being
     used as a motor vehicle, but as a mobile winch or crane. While
     the case was pending before the Court of Appeals, the Supreme
     Court decided *Bialochowski v Cross Concrete Pumping Co*, 428
     Mich 219 (1987). Concluding that *Bialochowski* implicitly over-
     ruled *Johnston*, the Court of Appeals, GRIBBS, P.J., and HOL-
     BROOK, JR., and N. J. LAMBROS, JJ., reversed in an unpublished
     opinion per curiam, holding that the truck was being used as a
     motor vehicle, and that, even though the truck was parked,
     coverage was not excluded under § 3106(1)(b) of the no-fault act
     (Docket No. 92528). The defendant appeals.

In an opinion by Justice GRIFFIN, joined by Chief Justice
     RILEY and Justices LEVIN, BRICKLEY, and BOYLE, the Supreme
     Court *held:*

In this case, the tow truck was not being used as a motor
     vehicle within the meaning of § 3105(1) of the no-fault act when
     the accident occurred because it was parked and none of the
     exceptions enumerated in § 3106(1) is applicable. Thus, the
     plaintiff is not entitled to personal injury protection benefits.

1. Section 3105(1) of the no-fault act provides that an insurer
     is liable to pay personal injury protection benefits for acciden-
     tal bodily injury arising out of the ownership, operation, main-
     tenance or use of a motor vehicle as a motor vehicle. Section
     3106(1) excludes coverage where a vehicle is parked unless an

REFERENCES

Am Jur 2d, Automobile Insurance §§ 131, 183 *et seq.*
See the Index to Annotations under Automobile Insurance.

enumerated exception is applicable. Thus, where, as in this case, an injury arises from the use of a motor vehicle as a motor vehicle under § 3105(1), entitlement to coverage is subject to the exclusion of § 3106(1) if the vehicle was parked at the time of the accident. Even if the vehicle was parked, under § 3106(1)(b), coverage is allowed if the injury was a direct result of physical contact with equipment permanently mounted on the vehicle while it was being operated or used, or with property being lifted onto or lowered from the vehicle in a process of loading or unloading.

2. In this case, the tow truck was not being used as a motor vehicle within the meaning of § 3105(1) because it was parked within the meaning of § 3106(1) and none of the exceptions set forth in that section is applicable. The plaintiff did not come into direct physical contact with the hook or winch of the truck, but, rather, was injured when a cement slab fell from the hook onto his hand. Because the plaintiff's injury was only indirectly the result of the use of the equipment, and because the slab was not being lifted onto or lowered from the truck, and at no time did anyone intend to load the slab onto the tow truck, the plaintiff is not entitled to recover benefits.

Reversed.

Justice CAVANAGH, joined by Justice ARCHER, dissenting, stated that once it is determined that a dual-purpose vehicle was being used for one of its intended purposes, and therefore was in use "as a motor vehicle" under § 3105(1), no-fault coverage is available for injuries which arose out of that use without regard to whether the vehicle might be considered parked.

INSURANCE — NO-FAULT — PERSONAL INJURY PROTECTION BENEFITS — PARKED VEHICLE.

An insurer is liable to pay personal injury protection benefits for accidental bodily injury arising out of the intended use of a motor vehicle as a motor vehicle; where the vehicle is parked, coverage is excluded except where the injury is a direct result of physical contact with equipment permanently mounted on the tow truck while the equipment was being operated or used, or with property being lifted onto or lowered from the vehicle in the loading or unloading process (MCL 500.3105[1], 500.3106[1]; MSA 24.13105[1], 24.13106[1]).

*John C. Carlisle* for the plaintiff.

*Brandt, Hanlon, Becker, Lanctot, McCutcheon, Martin & Schoolmaster* (by *Edwin F. Dyer, II*);

*MacArthur, Cheatham & Acker, P.C.* (by *James G. Gross*), of counsel, for the defendant.

GRIFFIN, J. In this insurance case, the carrier appeals from a determination that the no-fault act[1] covers an accidental injury to plaintiff which occurred when a slab of sidewalk, raised by a tow truck, slipped off its hook and fell on plaintiff's hand. Because the vehicle was "parked" within the meaning of § 3106(1)[2] at the time of the accident, and none of the § 3106(1) exceptions is applicable, plaintiff is not entitled to no-fault benefits, and we therefore reverse.

I

The essential facts are not in dispute. Plaintiff, a resident of Grosse Pointe Farms, was told by the city that the broken and uneven sidewalk in front of his house had to be leveled or replaced. Plaintiff decided to do the work himself, and he borrowed a tow truck and an operator from a friend who owned a neighborhood gas station.

Plaintiff decided that each of three large concrete slabs should be raised in order that the soil underneath could be leveled. The tow truck was backed over the curb, and a hook at the end of the winch cable was positioned over each slab as it was to be lifted. After a slab had been raised two or three feet, wood bracing was put in place to hold the slab, and plaintiff then proceeded to cut out roots and to remove or add soil where needed to level the ground. At one point while this cutting and filling took place, the operator drove the tow truck back to the gas station. Upon its return, the truck was used to relift each slab while the brac-

[1] MCL 500.3101 *et seq.*; MSA 24.13101 *et seq.*
[2] MCL 500.3106(1); MSA 24.13106(1).

ing was removed; the slab then was lowered to the ground. When this procedure was completed, plaintiff concluded that the slabs still were not level, and he decided that the process should be repeated.

In each instance when it was used to assist plaintiff, the truck was positioned perpendicular to the street, with its back wheels almost at the sidewalk. Although the wheels were not blocked, the operator set the hand brake and the front wheels were against the curb so as to immobilize them. With the truck in neutral gear, the operator raised or lowered the hook by operating controls located outside and at the back of the truck.

While one of the slabs was being raised for the third time, plaintiff, without inserting wood bracing, put his hand underneath the slab in order to level the last high spot. At that point a piece of the concrete broke off at the hook, and the slab fell, resulting in serious injury to plaintiff's hand.

After insurance coverage was denied, plaintiff filed this action against defendant Automobile Club of Michigan,[3] insurer of his personal automobile, seeking PIP benefits under the no-fault act. Defendant moved for summary disposition on the ground that plaintiff's injuries did not "arise[ ] out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle" within the meaning of § 3105(1) of the act. Defendant also argued that even if the truck was being used as a motor vehicle, plaintiff's recovery was barred under § 3106(1) because the truck was "parked" when the accident occurred and none of the § 3106(1) exceptions was applicable.

[3] Plaintiff also named as defendant the Auto-Owners Insurance Company, insurer of the tow truck. However, Auto-Owners was later dismissed by stipulation in view of the priority provisions of the no-fault act, MCL 500.3114(1), 500.3115(1); MSA 24.13114(1), 24.13115(1).

Relying on *Johnston v Hartford Ins Co,* 131 Mich App 349; 346 NW2d 549 (1984), lv den 419 Mich 893 (1984), the trial court granted defendant's motion for summary disposition, holding that when the accident occurred the tow truck was being used, not as a motor vehicle, but as a mobile winch or crane. Thereafter, while the instant case was pending before the Court of Appeals, we decided *Bialochowski v Cross Concrete Pumping Co,* 428 Mich 219; 407 NW2d 355 (1987). Concluding that *Bialochowski* had "implicitly overruled" *Johnston,* the Court of Appeals reversed, holding that the tow truck was being used as a motor vehicle. The appeals panel also determined that the truck was parked; however, it read this Court's opinion in *Miller v Auto-Owners Ins Co,* 411 Mich 633; 309 NW2d 544 (1981), as authority to conclude that § 3106(1) does not exclude coverage on these facts. The panel went further and reasoned that even if *Miller* did not apply, plaintiff would be entitled to recover under a broad interpretation of the exception set forth in § 3106(1)(b).[4] We granted leave to appeal. 430 Mich 891 (1988).

II

While conceding that the tow truck was "a motor vehicle," defendant argues that the truck was not being used "as a motor vehicle" within the meaning of § 3105(1) of the no-fault act. That provision states:

Under personal protection insurance an insurer is liable to pay benefits for accidental bodily injury arising out of the ownership, operation, maintenance or use of a motor vehicle *as a motor vehicle,*

---

[4] The opinion per curiam of the Court of Appeals in *Winter v Automobile Club of Michigan,* decided October 14, 1987 (Docket No. 92528), is unpublished.

subject to the provisions of this chapter. [Emphasis added.]

Defendant contends that the tow truck was being used as a stationary crane. Defendant further argues that in order to satisfy the "as a motor vehicle" requirement of § 3105(1) something more must be shown than that the injury arose out of the "use of a motor vehicle." Defendant maintains that the Legislature intended to include within the ambit of no-fault coverage only those accidents which result from the *vehicular* involvement of a motor vehicle in an accident. Before responding to these arguments, we believe a brief review of several cases is in order.

A

In *Miller,* the plaintiff was injured when his automobile fell on him while he attempted to replace a pair of shock absorbers. The *Miller* Court focused upon "tension" it found to exist between § 3105(1) which covers injuries incurred in the "maintenance" of a motor vehicle, and § 3106[5] which at the time appeared to exclude coverage of injuries incurred in the maintenance of a "parked" motor vehicle. Observing that virtually

---

[5] When Miller's injury occurred, § 3106(1) provided:

Accidental bodily injury does not arise out of the ownership, operation, maintenance or use of a parked vehicle as a motor vehicle unless any of the following occur:

(a) The vehicle was parked in such a way as to cause unreasonable risk of the bodily injury which occurred.

(b) The injury was a direct result of physical contact with equipment permanently mounted on the vehicle, while the equipment was being operated or used or property being lifted onto or lowered from the vehicle in the loading or unloading process.

(c) The injury was sustained by a person while occupying, entering into or alighting from the vehicle.

all maintenance is performed on a vehicle while it is parked, the *Miller* Court undertook the task of resolving this perceived conflict between the two provisions of the act. In an opinion by Justice LEVIN, the Court examined policies which underlie each provision:

> The policy embodied in the requirement of § 3105(1) that coverage extend to "injury arising out of the . . . maintenance . . . of a motor vehicle as a motor vehicle" thus is to provide compensation for injuries, such as Miller's, incurred in the course of repairing a vehicle.
>
> The policy underlying the parking exclusion is not so obvious but, once discerned, is comparably definite. Injuries involving parked vehicles do not normally involve the vehicle *as a motor vehicle.* Injuries involving parked vehicles typically involve the vehicle in much the same way as any other stationary object (such as a tree, sign post or boulder) would be involved. There is nothing about a parked vehicle *as a motor vehicle* that would bear on the accident.
>
>         *   *   *
>
> Each of the exceptions to the parking exclusion thus describes an instance where, although the vehicle is parked, its involvement in an accident is nonetheless directly related to its character as a motor vehicle. The underlying policy of the parking exclusion is that, except in three general types of situations, a parked car is not involved in an accident *as a motor vehicle.* It is therefore inappropriate to compensate injuries arising from its non-vehicular involvement in an accident within a system designed to compensate injuries involving motor vehicles as motor vehicles.
>
> The policies underlying § 3105(1) and § 3106 thus are complementary rather than conflicting. Nothing of the policy behind the parking exclusion —to exclude injuries not resulting from the involvement of a vehicle as a motor vehicle—conflicts with the policy of compensating injuries in-

curred in the course of maintaining (repairing) a
motor vehicle. [*Miller, supra,* pp 639-641. Empha-
sis in original.]

In *Bialochowski,* this Court considered the "as a
motor vehicle" requirement in connection with the
use of a dual-purpose vehicle. In that case, the
plaintiff was injured when the boom of a cement
truck collapsed on him. The injured plaintiff
claimed that the truck was being used "as a motor
vehicle" when the accident happened; however,
the insurer argued that it was being used "as a
piece of construction machinery, a cement pump,
which poured concrete at elevated levels." *Bialo-
chowski, supra,* p 226. In determining that the "as
a motor vehicle" requirement of § 3105(1) had been
met, the *Bialochowski* Court focused upon the fact
that the cement truck was a motor vehicle and
that it was being used for its intended purpose:

> Motor vehicles are designed and used for many
> different purposes. The truck involved in this case
> is a cement truck capable of pouring cement at
> elevated levels. Certainly one of the intended uses
> of this motor vehicle (a motor vehicle under the
> no-fault act) is to pump cement. The accident
> occurred while this vehicle was being used for its
> intended purpose. We hold that the phrase "use of
> a motor vehicle as a motor vehicle" includes this
> use. [*Id.,* pp 228-229.]

The *Bialochowski* Court distinguished *Johnston
v Hartford Ins Co, supra,* wherein a crane operator
had been injured when he slipped while entering
the crane's cab which contained the driving con-
trols. At the time of the injury, the crane could
not be driven or moved. It had been immobilized
by the placement of outriggers and counter-
weights, an operation that took three days to

accomplish. The *Johnston* panel determined that although the crane was a motor vehicle which could travel on the highway, the crane was not being used "as a motor vehicle" at the time in question.[6] The *Bialochowski* Court, in an opinion by Justice CAVANAGH, stated:

> Defendant's reliance on *Johnston* is misplaced . . . . [T]he truck in the present case is dissimilar to the crane in that it did not require three days and the attachment of counterweights and outriggers to immobilize it. Rather, although this truck was parked and stabilized, the stabilizers could have been disengaged, the truck started, and then driven away. [*Id.*, pp 227-228.]

Applying a "broad remedial interpretation," the *Bialochowski* Court also said,

> [W]e believe that the Court of Appeals in *Johnston* interpreted the statutory phrase "use of a motor vehicle as a motor vehicle" contained in § 3105 too narrowly. The no-fault act is remedial in nature, as evidenced by the fact that the act "was offered as an innovative social and legal response to the long payment delays, inequitable

---

[6] In *Johnston, supra,* p 360, the Court of Appeals stated:

A too technical approach, *i.e.,* one dictating that, once a dual-purpose vehicle has been ruled a motor vehicle, it is a motor vehicle at all times and for all purposes, would destroy the intent of the statute and create undesirable results. A common sense approach, however, dictates that the intention of the Legislature was to limit the act's coverage here to motor vehicles whose function at the time of the accident was one compatible with that of a motor vehicle. The intent of the Legislature should not be defeated by a technical or forced interpretation of the statutory language. *Grand Rapids Motor Coach Co v Public Service Comm,* 323 Mich 624, 635; 36 NW2d 299 (1949).

Under this analysis, once a dual-function unit has been converted to a sole nonlocomotive function, it should fall outside the liability statute.

payment structure, and high legal costs inherent in the tort (or 'fault') liability system." The no-fault act was designed "to provide victims of motor vehicle accidents assured, adequate, and prompt reparation for certain economic losses." In exchange for a more certain recovery under the no-fault act, an injured person's right to recover damages from a negligent owner or operator of a motor vehicle in a tort action is limited. This remedial nature of the no-fault act would be advanced by broadly construing its provisions to effectuate coverage. [*Id.*, p 228.]

Although *Bialochowski* utilized the interpretive tool of liberal construction, the reach of its holding should not be exaggerated. Insofar as it related to the "as a motor vehicle" language, *Bialochowski* decided a narrow issue: whether a dual-purpose vehicle is necessarily not in use as a motor vehicle when it is being used for a nonlocomotive purpose. *Bialochowski* held that coverage is not necessarily precluded solely because there was no "vehicular movement" at the time of the injury.[7]

Against that background, we turn now to the case at hand.

**B**

In this case, the tow truck was stopped; there was no "vehicular movement." Thus, we are required to determine whether the vehicle was parked and, if so, whether any of the exceptions set forth in § 3106(1) is applicable. At the time of plaintiff's injury, § 3106(1) provided:

[7] In *Thornton v Allstate Ins Co*, 425 Mich 643; 391 NW2d 320 (1986) there was no question but that the taxi was being used "as a motor vehicle." However, this Court found a lack of causal connection between that use and plaintiff's injury. Our analysis in this case does not focus on the issue of causation.

Accidental bodily injury does not arise out of the ownership, operation, maintenance, or use of a *parked* vehicle as a motor vehicle unless any of the following occur:

(a) The vehicle was parked in such a way as to cause unreasonable risk of the bodily injury which occurred.

(b) Except as provided in subsection (2), the injury was a direct result of physical contact with the equipment permanently mounted on the vehicle, while the equipment was being operated or used or property being lifted onto or lowered from the vehicle in the loading or unloading process.

(c) Except as provided in subsection (2) for an injury sustained in the course of employment while loading, or unloading, or doing mechanical work on a vehicle, the injury was sustained by a person while occupying, entering into, or alighting from the vehicle. [Emphasis supplied.][8]

Plaintiff contends that the tow truck was *not* parked, and for that reason reference to § 3106(1) is unnecessary. Plaintiff argues that a vehicle should not be considered as being "parked" unless it has been abandoned by the owner.

We need only refer to the language set forth in § 3106(1)(a)-(c) to demonstrate that such a restrictive definition was not intended. In particular, the words used in subparagraph (b) and (c) of § 3106(1) make clear that the Legislature contemplated that a vehicle, while parked, would not be abandoned.

The Court of Appeals found, and we agree, that the tow truck in this case was "parked" within any reasonable definition of that term. The truck was positioned perpendicular to the street with the front wheels against the curb, and the hand brake was set.

Although the Court of Appeals determined that the tow truck was parked, it pointed to *Miller* and

---

[8] Several clarifying amendments to § 3106(1) incorporated in 1986 PA 318, effective June 1, 1987, do not affect our analysis.

found § 3106(1) to be inapplicable on the facts of this case. The panel reasoned that since the tow truck was "involved in the accident while being used as a motor vehicle," it would be unnecessary, under *Miller,* to satisfy any of the § 3106(1) exceptions.

As already noted, *Miller* involved an injury which occurred while the plaintiff was performing maintenance repairs on his vehicle. The *Miller* Court did determine that because the injury arose out of "maintenance" of the vehicle, it was unnecessary to consider whether the vehicle was parked.[9] However, we caution that the *Miller* holding is limited to the narrow circumstances of that case.

In the instant case "maintenance" of a motor vehicle is not involved, and absent that involvement, we detect no "tension" between § 3105(1) and § 3106(1).

In limiting no-fault benefits to injuries "arising out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle," the Legislature realized that it would be inherently difficult to determine when a *parked* vehicle is in use "as a motor vehicle." Accordingly, the Legislature specifically described in subsections (a)-(c) of § 3106(1) the limited circumstances when a parked vehicle is being used "as a motor vehicle." Thus it is apparent that if a vehicle is "parked" coverage otherwise available under § 3105(1) is qualified by the provisions of § 3106(1). In the instant case,

---

[9] The *Miller* Court stated:

   Miller's injury while replacing his shock absorbers clearly involved the maintenance of his vehicle as a motor vehicle. Compensation is thus required by the no-fault act without regard to whether his vehicle might be considered "parked" at the time of injury. [*Miller, supra,* p 641.]

because the tow truck was parked, coverage is excluded by § 3106(1) unless one of its exceptions is applicable.[10]

### III

Plaintiff argues that he is entitled to coverage under one or both of the § 3106(1)(b) exceptions.

The first prong of subsection (b) allows coverage if the injury is "a direct result of physical contact with equipment permanently mounted on the vehicle, while the equipment was being operated or used . . . ." In this case, plaintiff's injuries occurred when a concrete slab disengaged from the hook of the tow truck and fell upon his hand. It is undisputed that the hook was permanently affixed to the tow truck and that it was being used. We therefore focus upon what is meant by the words "direct result of physical contact."

Plaintiff argues, and the Court of Appeals agreed,[11] that direct physical contact between

---

[10] In *Bialochowski, supra* at 229, we stated:

> Having concluded that the equipment truck was a motor vehicle being used as a motor vehicle, our inquiry is not complete. In order to receive no-fault benefits for an injury involving a parked vehicle, one of the criteria established in § 3106 of the no-fault act must be met.

To the extent that this passage can be read to mean that a determination of whether § 3105(1) is fulfilled is to be made separately from a determination of whether § 3106(1) is fulfilled, it is overruled.

[11] The Court of Appeals stated:

> We believe that plaintiff's accident, having his fingers severed when the concrete slab broke or slipped off the hook, also falls within the subsection (b) exception that the injury be a direct result of physical contact with equipment permanently mounted on the vehicle, while the equipment was being operated. We reject as incompatible with the purpose behind the parking exclusion any suggestion that the tow truck boom and/or hook must make physical contact with the plaintiff's person. The boom, cable and hook were permanently mounted on the

plaintiff and the equipment itself is not necessary. The panel considered it sufficient that the injury was a direct result of contact made with the slab of concrete being lifted or lowered. This interpretation of the statute separates the requirements of "physical contact" and "direct result," and emphasizes the latter. Such an interpretation of the statutory language would not require actual physical contact.

The alternative interpretation, obviously supported by defendant, is that the injury must directly result from actual physical contact between the injured person and the equipment. See, e.g., *Frohm v American Motorists Ins Co,* 148 Mich App 308; 383 NW2d 604 (1985), lv den 425 Mich 857 (1986).

We believe that this latter interpretation accords the term "direct" the meaning that the Legislature intended in enacting § 3106(1)(b).[12] If the Legislature had intended broader coverage, it could easily have used the phrase "arising out of" rather than "was a direct result of." The former phrase would connote coverage in the absence of physical contact between the injured person and the injury-producing instrument. Moreover, insertion of the word "physical" in the subsection fortifies a legislative intent that the injured person's body must come into contact with the equipment. Once again, had the Legislature not intended this requirement, it could have stated simply that ben-

vehicle. Plaintiff's injury was a *direct result* of physical contact with this equipment. The concrete slab slipped or broke off from the hook while it was being lifted. [Emphasis in original.]

[12] The position of the second comma in § 3106(1)(b) has created some confusion. See *Arnold v Auto-Owners Ins Co,* 84 Mich App 75; 269 NW2d 311 (1978), lv den 405 Mich 804 (1979) (the clause beginning with the word "property" is not subject to the first clause). The interpretation is supported by an amendment, 1986 PA 318, which added a comma after the word "used."

efits were recoverable if the equipment "caused" the injury. The Legislature's choice of terminology was deliberate, and this Court must give it the effect dictated by the language and the purpose of the provision.

In the case before us, plaintiff did not, in contrast with the plaintiff in *Bialochowski,* come into contact with the hook or winch of the truck. Rather, he was injured when the cement slab fell from the hook onto his hand. Since the injury to plaintiff was only indirectly the result of use of the equipment, we must hold that plaintiff cannot recover benefits under the first prong of § 3106(1)(b).

The second prong requires that the injury be a direct result of physical contact with "property being lifted onto or lowered from the vehicle in the loading or unloading process." § 3106(1)(b). The Court of Appeals found that this requirement was fulfilled, stating:

> Additionally, although declining to engage in any extensive analysis, we do not adopt defendant's argument that the exception for property being lifted or lowered from the vehicle in the loading or unloading process does not apply as well. We see little significance in drawing a line between, for example, loading articles onto the bed of a truck, and the type of lifting that the tow truck was utilized for in the instant case.

We disagree. It is undisputed that the cement slab in the instant case was not being lifted onto or lowered from the tow truck. No such operation was attempted. The sole purpose of lifting the sidewalk slab was to enable plaintiff to work under it. At no time did anyone intend to load the slab onto the tow truck. Thus, we hold that the requirements of § 3106(1)(b) have not been met.

IV

The tow truck in the instant case was not being used "as a motor vehicle" within the meaning of § 3105(1) because it was "parked" within the meaning of § 3106(1) and none of the exceptions set forth in § 3106(1) is applicable. Thus, we conclude that plaintiff is not entitled to no-fault PIP benefits. Accordingly, for the reasons stated, the decision of the Court of Appeals is reversed.

RILEY, C.J., and LEVIN, BRICKLEY, and BOYLE, JJ., concurred with GRIFFIN, J.

CAVANAGH, J. (*dissenting*). I agree with the majority of the Court that the tow truck was in use "as a motor vehicle" when plaintiff's injuries occurred. The truck was being used for its intended purpose, and in accordance with the decision in *Bialochowski v Cross Concrete Pumping Co,* 428 Mich 219; 407 NW2d 355 (1987), the truck was in use "as a motor vehicle" within the meaning of § 3105(1) of the no-fault act.[1]

I disagree, however, with the majority's conclusion that because none of the exceptions to the parked vehicle exclusion outlined in § 3106(1)[2] is applicable, no-fault coverage is not available to plaintiff. In *Miller v Auto-Owners Ins Co,* 411 Mich 633, 641; 309 NW2d 544 (1981), the Court held that the plaintiff was entitled to no-fault coverage for injuries incurred during the maintenance of his vehicle as a motor vehicle without regard to whether the vehicle might be considered "parked" at the time of the injury. The Court referred to the policies underlying §§ 3105(1) and 3106(1), stating:

[1] MCL 500.3105(1); MSA 24.13105(1).
[2] MCL 500.3106(1); MSA 24.13106(1).

The policy underlying the parking exclusion is not so obvious but, once discerned, is comparably definite. Injuries involving parked vehicles do not normally involve the vehicle *as a motor vehicle.* Injuries involving parked vehicles typically involve the vehicle in much the same way as any other stationary object (such as a tree, sign post or boulder) would be involved. There is nothing about a parked vehicle *as a motor vehicle* that would bear on the accident.

\* \* \*

Each of the exceptions to the parking exclusion thus describes an instance where, although the vehicle is parked, its involvement in an accident is nonetheless directly related to its character as a motor vehicle. The underlying policy of the parking exclusion is that, except in three general types of situations, a parked car is not involved in an accident *as a motor vehicle.* It is therefore inappropriate to compensate injuries arising from its non-vehicular involvement in an accident within a system designed to compensate injuries involving motor vehicles as motor vehicles. [*Miller, supra,* pp 639-641. Emphasis in original.]

I agree with the Court of Appeals that reference to the policies underlying these two statutory provisions is no less appropriate in the present case than in *Miller.* The purpose behind the parked vehicle exclusion would not be advanced by applying the provision so as to prevent coverage for plaintiff's injuries.

I would hold that once it is determined that a dual-purpose vehicle, such as the cement truck in *Bialochowski* and the tow truck in this case, was being used for one of its intended purposes and was, therefore, in use "as a motor vehicle" under § 3105(1), no-fault coverage is available for injuries which arose out of that use without regard to

whether the vehicle might be considered "parked." For this reason, I would affirm the decision of the Court of Appeals.

ARCHER, J., concurred with CAVANAGH, J.