# STATE OF MICHIGAN

# COURT OF APPEALS

TAMARA WOODRING,

        Plaintiff-Appellee,

v

PHOENIX INSURANCE COMPANY,

        Defendant-Appellant.

FOR PUBLICATION
June 28, 2018
9:10 a.m.

No. 324128
Muskegon Circuit Court
LC No. 14-049544-NI

Before: RONAYNE KRAUSE, P.J., and MARKEY and RIORDAN, JJ.

RONAYNE KRAUSE, P.J.

Defendant appeals as on leave granted, pursuant to an order of remand from our Supreme Court, the trial court's denial of summary disposition in defendant's favor and grant of summary disposition in plaintiff's favor. For purposes of the instant appeal, the facts are undisputed. Plaintiff's employer provided her with a vehicle, which was insured by defendant. Plaintiff went to a self-serve spray car wash in early February, parked but left the vehicle running, began washing the vehicle, and as she worked her way around to the rear of the vehicle, she slipped and fell, suffering serious injuries. It is unknown why plaintiff slipped, or what she slipped on, but she believes it may have been ice. It is undisputed that plaintiff was not entering, occupying, exiting, or touching the vehicle at the time of her fall, although she was using the car wash's sprayer wand. The trial court's denial and grant of summary disposition was based in significant part on the fact that precedent from our Supreme Court, which was confusing, had not clearly overruled precedent from this Court, which was therefore still good law. We agree and affirm.

As an initial matter, the remand order from our Supreme Court reads, in its entirety, as follows:

By order of September 27, 2016, the application for leave to appeal the March 3, 2015 order of the Court of Appeals was held in abeyance pending the decision in *Spectrum Health Hospitals v Westfield Ins Co* (Docket No. 151419). On order of the Court, the case having been decided on June 30, 2017, 500 Mich [1024; 897 NW2d 166] (2017), the application is again considered and, pursuant to MCR 7.305(H)(1), in lieu of granting leave to appeal, we REMAND this case to the Court of Appeals for consideration as on leave granted. Among the issues to be considered, the Court of Appeals shall address whether the causal connection between the plaintiff's injuries and the maintenance of a motor vehicle

-1-

as a motor vehicle is more than incidental, fortuitous, or "but for." *Thornton v Allstate Ins Co*, 425 Mich 643, 659 (1986). [*Woodring v Phoenix Ins Co*, 501 Mich 883; 901 NW2d 887 (2017).]

The decision in *Spectrum* consisted entirely of an order remanding that case to this Court for reconsideration in light of *Convent Med Ctr, Inc v State Farm Mut Auto Ins Co*, 500 Mich 191; 895 NW2d 490 (2017). That case addresses whether a healthcare provider has a statutory cause of action against an insurer for the payment of PIP benefits; it does not appear to address any issues relevant to the instant appeal.

Plaintiff argues that the issue specified for consideration by our Supreme Court was not argued in the trial court and, therefore, is allegedly unpreserved. It is true that defendant only mentioned the requirement in its brief and provided no supporting argument whatsoever. However, defendant did argue at the motion hearing that plaintiff's act of washing her vehicle did not constitute a sufficient causal nexus, but rather "just merely a fortuitous location where the accident happened." Defendant clearly makes a significantly more thorough argument on appeal, but that does not preclude appellate consideration where the issue itself is not wholly novel. See *Steward v Panek*, 251 Mich App 546, 554; 652 NW2d 232 (2002). In any event, because we may not disregard explicit and comprehensible instructions given to us by our Supreme Court, plaintiff's argument is misplaced. We will address this issue second.

A grant or denial of summary disposition is reviewed de novo on the basis of the entire record to determine if the moving party is entitled to judgment as a matter of law. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). When reviewing a motion under MCR 2.116(C)(10), which tests the factual sufficiency of the complaint, this Court considers all evidence submitted by the parties in the light most favorable to the non-moving party and grants summary disposition only where the evidence fails to establish a genuine issue regarding any material fact. *Id*. at 120. The interpretation and application of statutes, rules, and legal doctrines is reviewed de novo. *Estes v Titus*, 481 Mich 573, 578-579; 751 NW2d 493 (2008).

Much of the instant appeal turns on whether this Court's opinion in *Musall v Golcheff*, 174 Mich App 700; 436 NW2d 451 (1989), remains precedential. Defendant argues that it is not binding pursuant to 7.215(J)(1), the "first-out rule," while citing an unpublished opinion that is clearly not binding pursuant to MCR 7.215(C)(1). Unpublished cases are significantly less persuasive; this Court may not be strictly bound to follow older published cases, but traditionally regards them as retaining some authority, at least where they are not disputed by some other contemporaneous case. Indeed, MCR 7.215(J)(1) does *not* state, as does MCR 7.215(C)(1), that older cases are not precedentially binding, only that later ones must be followed. In contrast, MCR 7.215(C)(1) explicitly states that unpublished opinions "should not be cited for propositions of law for which there is published authority," whereas no similar restriction applies under MCR 7.215(J)(1). Defendant's argument is therefore, disingenuous.

Our Supreme Court "recognizes the maxim *expressio unius est exclusio alterius*; that the express mention in a statute of one thing implies the exclusion of other similar things." *Bradley v Saranac Community Schools Bd of Ed*, 455 Mich 285, 298; 565 NW2d 677 (1997). Interpretation of a court rule follows the general rules of statutory construction. *Grievance Administrator v Underwood*, 462 Mich 188, 193-194; 612 NW2d 116 (2000). We think it

reasonable to draw the negative inference that we are not *strictly required* to follow uncontradicted opinions from this Court decided prior to November 1, 1990, but we think they are nevertheless considered to be precedent and entitled to significantly greater deference than are unpublished cases. Consequently, we are not impressed by the suggestion that *Musall* has no precedential effect simply because it is an older case.

That being said, this Court may not follow *any* opinion previously decided by this Court, no matter when, to the extent that opinion conflicts with binding precedent from our Supreme Court, which may be any essentially anything it issues that conforms to Const 1963, Art 6, § 6. *DeFrain v State Farm Mut Auto Ins Co*, 491 Mich 359, 369-370; 817 NW2d 504 (2012). This includes peremptory orders to the extent they can theoretically be understood, even if doing so requires one to seek out other opinions, notwithstanding, with all due respect, the enormous confusion they sow and the frustration they generate. *Id*.; see also *People v Crall*, 444 Mich 463, 464 n 8; 510 NW2d 182 (1993); *Evans & Luptak, PLC v Lizza*, 251 Mich App 187, 196; 650 NW2d 364 (2002). Defendant thus relies on the argument that *Lefevers v State Farm Mut Automobile Ins Co*, 493 Mich 960; 828 NW2d 678 (2013), and *Frazier v Allstate Ins Co*, 490 Mich 381; 808 NW 2d 450 (2011), because they partially "disavowed" *Miller v Auto-Owners Ins Co*, 411 Mich 633; 309 NW2d 544 (1981), upon which *Musall* relied. This convoluted chain thus depends on what exactly "disavowal" means and whether the peremptory orders are comprehensible.

Although no published cases have defined the difference, "disavowal" must mean something distinct from "overruling." See, e.g., *Renny v Dep't of Transportation*, 478 Mich 490, 505 n 36; 734 NW2d 518 (2007). It appears clear from usage that disavowal is a pronouncement that a rule of law stated in a case no longer applies without otherwise touching the result of the prior judgment. See *Ray v Swager*, 501 Mich 52, 72 n 49; 903 NW2d 366 (2017); *Kidder v Ptacin*, 284 Mich App 166, 171; 771 NW2d 806 (2009). Disavowal is, therefore, a repudiation that recognizes that a rule of law *has been* overruled as a consequence of some other decision, holding, or pronouncement, without *itself* constituting that overruling.

Because *Lefevers* can be comprehended, it is precedent binding on this Court and thus precludes this Court from relying on any prior decisions in conflict with it. *Lefevers* unambiguously held that *Miller* was disavowed to the extent it conflicts with *Frazier*, which did not itself mention *Miller* at all. However, *Lefevers* only stated that the exact portion of *Miller* that was "disavowed as dicta" was as follows:

> Section 3106(b) recognizes that some parked vehicles may still be operated as motor vehicles, creating a risk of injury from such use as a vehicle. Thus a parked delivery truck may cause injury in the course of raising or lowering its lift or the door of a parked car, when opened into traffic, may cause an accident. Accidents of this type involve the vehicle as a motor vehicle. [*Lefevers*, 493 Mich at 960, quoting *Miller*, 411 Mich at 640.]

That is as far as the order went. We cannot comprehend any holding beyond that, and we think it would be inappropriate to imply anything additional to the order. The fact that *Miller* was only partially "disavowed" necessarily means that the trial court properly found *Miller* to also remain "good law" in part. Indeed, our Supreme Court has even recently cited *Miller* as remaining

binding precedent at least in part. See *Kemp v Farm Bureau Gen Ins Co of Michigan*, 500 Mich 245, 542 n 36; 901 NW2d 534 (2017).

In *Miller*, our Supreme Court observed that it was incongruous for MCL 500.3105(1) to provide PIP benefits for, *inter alia*, maintenance of a motor vehicle as a motor vehicle, but for MCL 500.3106(1) to simultaneously provide that parked vehicles were generally excluded, because maintenance was usually not performed on vehicles while they are in motion and the exceptions seemed irrelevant to maintenance. *Miller*, 411 Mich at 637-638. This is completely logical. Consequently, the *Miller* Court turned to an analysis of the policies underlying the No-Fault Act and the various provisions of it. *Id*. at 638-641.

In so doing, the Court concluded that the parking exclusion reflected a policy decision that parked cars were generally not operating as motor vehicles except in three general circumstances in which "an accident is nonetheless directly related to its character as a motor vehicle." *Id*. at 640-641. Thus:

> The policies underlying § 3105(1) and § 3106 thus are complementary rather than conflicting. Nothing of the policy behind the parking exclusion to exclude injuries not resulting from the involvement of a vehicle as a motor vehicle conflicts with the policy of compensating injuries incurred in the course of maintaining (repairing) a motor vehicle. The terms of the parking exclusion should be construed to effectuate the policy they embody and to avoid conflict with another provision whose effect was intended to be complementary. […] [The plaintiff's] injury while replacing his shock absorbers clearly involved the maintenance of his vehicle as a motor vehicle. Compensation is thus required by the no-fault act without regard to whether his vehicle might be considered 'parked' at the time of injury." [*Id*. at 641.]

Plaintiff accurately points out that the plaintiff in *Frazier* was not engaged in any kind of maintenance, but rather simply closing the door of the vehicle after having alighted from the vehicle. *Frazier*, 490 Mich at 386-387. Likewise, it is apparent from this Court's opinion in *Lefevers*, to which we must refer in order to fully comprehend our Supreme Court's order, that the plaintiff in that case was also not engaging in maintenance, but rather attempting to open a trailer liftgate. *Lefevers v State Farm Mut Automobile Ins Co*, unpublished opinion per curiam of the Court of Appeals, decided December 13, 2011 (Docket No. 298216), slip op at p 2.

Nothing in either *Frazier* or *Lefevers* directly undermines the holding in *Miller* that the parked-vehicle exception in MCL 500.3106(1) is simply not triggered if an injury is caused by the maintenance of a vehicle as a motor vehicle, whether or not the vehicle is in fact parked. Plaintiff's claim is not that her Jeep was being *operated* as a motor vehicle, but rather *maintained* as a motor vehicle. The portion of *Miller* holding that the "parked vehicle" exception is not triggered was, therefore, not apparently affected.

Defendant argues that *Frazier* and *Lefevers* are not the only cases from our Supreme Court that have the effect of overruling the relevant holding of *Miller*. Defendant relies extensively on our Supreme Court's holding that scraping ice off a vehicle's windshield was unrelated to, *inter alia*, maintenance of a motor vehicle as a motor vehicle. *Willer v Titan Ins*

-4-

*Co*, 480 Mich 1177; 747 NW2d 245 (2008). Notably, however, nothing in *Willer* stated that scraping ice was or was not maintenance; rather, it only addressed causation, which would be a function of MCL 500.3105. Even more notably, it was an appeal from an order of this Court denying an application for leave with no factual discussion. Our Supreme Court's peremptory orders are, after all, only binding to the extent they can be comprehended. Because there are *no* facts in either our Supreme Court's order or this Court's order from which any hints may be gleaned, nothing in that order can be comprehended as contributing any value whatsoever to an understanding of what does, or does not, constitute "maintenance." It did not mention *Miller* except in a concurring opinion, and therefore it appears to have no precedential relevance to *Miller* or any holding relevant in it.

Otherwise, far from overturning it, our Supreme Court has reiterated that *Miller* had found "that because the injury arose out of 'maintenance' of the vehicle, it was unnecessary to consider whether the vehicle was parked," but rather cautioned "that the *Miller* holding is limited to the narrow circumstances of that case." *Winter v Automobile Club of Michigan*, 433 Mich 446, 457; 446 NW2d 132 (1989); *Putkamer v Transamerica Ins Corp of America*, 454 Mich 626, 632 n 5; 563 NW2d 683 (1997). It is only otherwise that "[w]here the motor vehicle is parked, the determination whether the injury is covered by the no-fault insurer generally is governed by the provisions of subsection 3106(1) alone." *Putkamer*, 454 Mich at 632. Our Supreme Court further clarified that the No-Fault Act was fundamentally intended to restrict payment of PIP benefits under MCL 500.3105 to injuries related to the "transportational function" of a motor vehicle, but the vehicle did not necessarily need to be in motion. *McKenzie v Auto Club Ins Ass'n*, 458 Mich 214, 220-226; 580 NW2d 424 (1998).

Obviously, *Miller* is no longer binding precedent in its entirety. However, its essential holding that "maintenance" of a parked vehicle will, at least under some circumstances, avoid triggering MCL 500.3106(1) does not appear to have been implicitly or explicitly overruled. If anything, it has been reaffirmed, subject only to whatever our Supreme Court meant by "the narrow circumstances of that case." In the absence of any clarification of that statement, the most rational interpretation is to rely on the policy discussion in *Miller* itself, filtered through the policy discussion in *McKenzie*. The gravamen of *Miller* is that because most forms of vehicular maintenance *literally* cannot be performed unless a vehicle is parked, the word "maintenance" in MCL 500.3105(1) would be rendered nugatory by MCL 500.3106 unless that maintenance avoided triggering MCL 500.3106 altogether. *McKenzie* would suggest that any such maintenance must have some bearing on the "transportational function" of the vehicle.

Clearly, just as Michigan residents are completely expected to have some awareness of the practical implications of snow and ice, any Michigan resident would be aware that keeping their cars clean keeps them running longer and without danger. Considering the condition of our roads and the salt used for snow and ice on our roads, cleaning a car is essential to be able to see while driving. Nothing in *McKenzie*, *Winter*, *Putkamer*, *Willer*, *Frazier*, or *Lefevers* is inconsistent with this Court's finding in *Musall* that washing a car does indeed constitute the kind of maintenance that will avoid the operation of MCL 500.3106(1). Consequently, they do not implicitly or explicitly overrule *Musall*. It is essential to see out of the windows and windshield while driving or risk injury or death to the driver or others.

We additionally note that the word "parked" is not defined in the No-Fault Act, and in fact only occurs in two sections out of the entirety of Chapter 500, those being MCL 500.3106 and MCL 500.3123. This necessarily implicates the question of whether plaintiff's vehicle was even "parked" at all. While it may seem intuitively obvious, almost every intuitively obvious categorization scheme inevitably breaks down into "I know it when I see it," which is precisely the opposite of a definition and thus an open invitation to capriciousness and unpredictability.

In particular, it should be clear that a vehicle is not necessarily "parked" just because it is stopped, halted, standing, or otherwise not presently in motion. Indeed, our Supreme Court has indicated that a lack of vehicular movement merely triggers a requirement to consider *whether* the vehicle is therefore "parked." *Winter*, 433 Mich at 455. In that case, a tow truck "positioned perpendicular to the street with the front wheels against the curb" with the hand brake set was deemed "parked" while it was being used to assist the plaintiff in lifting and leveling concrete slabs. *Id*. at 448-449, 456. In contrast, it would seem completely unreasonable to conclude that a vehicle that is unambiguously still within the flow of traffic but temporarily motionless should not be considered a "parked" vehicle under the No-Fault Act. Indeed, this Court has explicitly noted that a vehicle stopped at a traffic light does not constitute a "parked vehicle." *Bachman v Progressive Cas Ins Co*, 135 Mich App 641, 642-643; 354 NW2d 292 (1984).

This Court subsequently applied the definition of "parking" found in MCL 257.38 of the Motor Vehicle Code, which defines it as "standing a vehicle, whether occupied or not, upon a highway, when not loading or unloading except when making necessary repairs." *United Southern Assurance Co v Aetna Life & Cas Ins Co*, 189 Mich App 485, 488-490; 474 NW2d 131 (1991). This Court further noted that this definition was similar to the dictionary definition, and opined that parking, standing, and stopping at the edge of a highway were synonymous. *Id*. This latter definition is, however, extremely troublesome because it obviously has no application anywhere other than on an expressway; it would also seem to hold that a vehicle is by definition not parked "when making necessary repairs" even if it is not moving. It would also seem to indicate that a vehicle *is* "parked" while motionless at a traffic light. It is not workable to rely on MCL 257.38 anywhere other than on a highway, given its intended exclusive application to the regulation of vehicles on highways. See *Kudek v Detroit Auto Inter-Insurance Exch*, 100 Mich App 635, 640-641; 300 NW2d 350 (1980), rev'd on other grounds 414 Mich 956 (1982). It is likewise unworkable simply to treat any vehicle not presently in motion as "parked."

The most coherent and succinct definition of what constitutes a "parked" vehicle is whether it was "in use as a motor vehicle" or more "like 'other stationary roadside objects that can be involved in vehicle accidents.'" *Heard v State Farm Mut Auto Ins Co*, 414 Mich 139, 145; 324 NW2d 1 (1982). Ironically, in *Heard*, neither our Supreme Court nor this Court analyzed why the car, which was at a gasoline station where the plaintiff was pumping gasoline into it, was considered "parked" in that case; rather, both Courts appear to have presumed so and instead discussed whether it was "involved" in the accident. Insofar as we can determine, the plaintiff in *Heard* asserted that the vehicle had been parked, and the issue was never disputed. Similarly, in *Musall*, this Court treated the vehicle as parked but never analyzed the issue.

A somewhat less clear case is *MacDonald v Michigan Mut Ins Co*, 155 Mich App 650; 400 NW2d 305 (1986). Superficially, this Court apparently held that if the wheels were not moving, the vehicle was "parked." *Id*. at 655-656. However, a more careful reading of the case

and its context reveals that the trailer was in the process of having its wheels and axle adjusted, and it was fundamental to that particular operation that the wheels were supposed to be stationary while the trailer box was moved. *Id*. at 653. The plaintiff contended on appeal that the vehicle was not really parked because some slight shifting back and forth of the trailer box occurred; it was in that context that this Court focused on the movement of the wheels. *Id*. at 654-656. It therefore appears that the vehicle in question was in no state whatsoever to be operated and, consequently, was *transportationally* indistinguishable from any other piece of heavy equipment undergoing maintenance. This Court never addressed the maintenance exception pursuant to *Miller*, however, because the plaintiff was denied benefits under MCL 500.3106(2), not MCL 500.3106(1). *Id*. at 654.

Notably, of the cases that have expressly analyzed what constitutes "parked," the tow truck in *Winter* was being used as a mobile tool, not a vehicle. In *Davis v Auto Owners Inc Co*, 116 Mich App 402, 406-408; 323 NW2d 418 (1982), another tow truck was deemed "parked" while it was in the process of winching a stranded car out of a ditch; again, clearly being used as a tool. The car at the traffic light in *Bachman*, however, was clearly still being used as a car, and in contrast, the trailer in *MacDonald* was immobilized. The only obvious definition that can be assembled from the above is whether the vehicle is both motionless *and* either being used as something unrelated to being a vehicle or being incapable of readily put back into motion. Plaintiff's vehicle was indeed motionless here, but it was also still running and clearly not intended to be left alone or to be unoccupied for very long. In the event the maintenance exception were to be deemed inapplicable, we would hold that whether the vehicle was "parked" can only be resolved by posing the question to the trier of fact, because that is the only proper way to resolve a factual question where no bright-line rule can be easily established and where human intuition must be relied upon. Thus, even if summary disposition in plaintiff's favor were to be found improper, the trial court's refusal to grant summary disposition in defendant's favor must still be affirmed.

Thus, we now turn to our Supreme Court's order to consider "whether the causal connection between the plaintiff's injuries and the maintenance of a motor vehicle as a motor vehicle is more than incidental, fortuitous, or 'but for.'" As discussed, *Willer* is utterly barren of any worth to this analysis. It makes a specific reference to "on this record," however, no record exists that may be readily found. It sets forth essentially no facts, and it is a reversal of an order of this Court denying leave to appeal, which also set forth no facts. Again, our Supreme Court's peremptory orders are only binding to the extent they are comprehensible, and *Willer* simply is not. All we know is that *on the facts of that case, whatever they were*, the plaintiff in *Willer* failed to persuade our Supreme Court that there was a more-than-but-for causal connection between her injuries and the scraping of her windshield.

Defendant additionally cites several cases in which the plaintiffs in those cases allegedly slipped and fell "in the general vicinity of a vehicle" and were deemed to lack the requisite causal connection. Such a conclusion is obvious and irrelevant. It would naturally follow that merely being near to a vehicle will not spontaneously generate a causal connection to that vehicle. In contrast, plaintiff was actively engaged in performing essential maintenance to the vehicle pertinent to its use as a motor vehicle. It may have been routine maintenance and not necessarily of immediate urgency to permit it to move at all, but essential maintenance nonetheless. Because *Musall* remains controlling precedent and has already determined that

such a causal nexus exists on highly similar facts, we would follow that conclusion even if we did not agree with it.

We respectfully disagree with our dissenting colleague's estimation of *Williams v Pioneer State Mut Ins Co*, 497 Mich 875; 857 NW2d 1 (2014). As the Court held in that matter, the tree branch in that case was not causally linked to any act or omission of the plaintiff. It was not one of the branches plaintiff removed from the car, it was not struck by or otherwise caused to fall by plaintiff or one of the branches plaintiff removed from the car, it was not struck by the car, and in general plaintiff did not put into motion any chain of events that influenced the branch falling. In contrast, our dissenting colleague here appears to dismiss the strong likelihood that the slippery patch on the floor was directly caused by the physical acts of maintenance performed by plaintiff, and even if it was not, those physical acts of maintenance directly impaired plaintiff's ability to detect or avoid it, or to prevent herself from actually falling or getting hurt even if avoidance of the slippery patch was impossible. It stands to reason that the tree branch that struck the plaintiff in *Williams* was outside any chain of causation involving the plaintiff or her car. Plaintiff's maintenance of her car here did not simply happen to be performed in the wrong place at the wrong time, but in fact had a direct causal influence on her fall and resulting injury.

In summary, we find that the maintenance exception is still "good law," that it applies to the facts in this case, that there would necessarily be a genuine question of material fact for the jury even if the maintenance exception did not apply here, and that there is a sufficient causal nexus "between the plaintiff's injuries and the maintenance of a motor vehicle as a motor vehicle." We therefore affirm.

/s/ Amy Ronayne Krause
/s/ Jane E. Markey